**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
                                  :

ATARI INTERACTIVE, INC.,           :   Civil Action No. 1:19-cv-03111
                                  :
                Plaintiff,   :  **TARGET CORPORATION'S REPLY**
                                  :  **IN SUPPORT OF ITS MOTION TO**
           vs.              :  **DISMISS AND TO TRANSFER**
                                  :

TARGET CORPORATION,            :
                                  :
                Defendant.   :
                                  :
---------------------------------------------------------------X

      This Reply Memorandum of Law is submitted in support of Defendant Target

Corporation's ("Target's") Motion to Dismiss Plaintiff Atari Interactive, Inc.'s ("Atari's")

Federal Trademark Counterfeiting (Count I) and State Deceptive Practices (Count V) claims

pursuant to Federal Rule of Civil Procedure 12(b)(6), and to transfer the remainder of the case to

the District of Minnesota pursuant to 28 U.S.C. § 1404.

**I.    Atari Does Not State a Counterfeiting or Deceptive Practices Claim**

    **A.    There is No Allegation That Target Used a Counterfeit Mark in Commerce**

      Atari's Opposition assumes away the fundamental problem with its counterfeiting claim:

that Target did not use a counterfeit mark in commerce. *See* 15 U.S.C. § 1114(1) (requiring a

"use in commerce" of a "reproduction, counterfeit, copy, or colorable imitation of a registered

mark" for purposes of establishing counterfeiting liability).

      Atari's trademark counterfeiting claim is based on a single factual allegation: the phrase

"foot pong" appeared in quotation marks in the title of an article in the *Minneapolis/St. Paul*

*Business Journal*. (*See* Dkt. 1, ¶ 22.) The phrase "foot pong" is nowhere else to be found. It is

not on the game itself: the Complaint includes a screenshot of the game in question, and neither

"pong," nor "foot pong," appear anywhere on it. (*Id.*, ¶ 20.) It is not depicted on any in-store

signage. It is not on any marketing, advertising, or promotional materials. And it is not on any

products or product packaging. In fact, as the Complaint makes clear, the game in question was never even sold at all (Atari alleges that Target profited from the game by "keeping customers in Target stores where they spend additional money"). (*Id.*, ¶ 29.) As such, there is no allegation that Target used a counterfeit mark in commerce.

Atari's Opposition attempts to conceal this fact by assuming unpled use—for example, discussing "the games to which the marks have been applied," "Target's addition of the word 'foot' before 'Pong'," and even going so far as to say that "Target has obviously *intentionally* used Atari's mark." (Dkt. 29 at 3.). But there is no allegation that Target applied a mark to a game. All Atari has alleged is an utterance—and even that is an assumption, made on information and belief. (Dkt. 22, ¶ 22.) This does not state a $2 million claim for trademark counterfeiting. *See, e.g.*, *Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 1063464, at *4 (S.D.N.Y. Mar. 21, 2017) (dismissing counterfeiting claim on a Rule 12(b)(6) motion because defendant did not use a counterfeit mark).

In these circumstances, Atari's focus on *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 472 (S.D.N.Y. 2011), *aff'd sub nom. GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, 558 F. App'x 116 (2d Cir. 2014) does it no favors. Based on *GMA Accessories*, Atari claims that the Court should look at the counterfeiting activity alleged in the Complaint in "context" and "as consumers would encounter [it] in the marketplace." (Dkt. 29 at 3.) But even if this were correct, the "context" would be the *Minneapolis/St. Paul Business Journal*—has Target committed counterfeiting through that publication? Context does not help Atari's counterfeiting claim.

In any event, Atari fails to address the case law in this district holding that "marks that are similar to the registered mark, but differ by two or more letters, are not likely to be considered counterfeit." *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp. Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007). For this reason, too, Atari's counterfeiting claim should be dismissed.

### B.      Atari Fails to State a Claim Under New York General Business Law § 349

Despite Atari's suggestion to the contrary, the Second Circuit has held that "'the gravamen' of a complaint for deceptive practices under New York General Business Law § 349 "must be consumer injury or harm to the public interest.'" *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F.Supp. 1084, 1089 n. 6 (S.D.N.Y.1988)).

Target cited numerous examples in which courts in this district have held that garden variety trademark claims do not pose sufficient harm to the public interest to state a claim for deceptive practices under Section 349. In rebuttal, Atari contends that "other district courts have come out on precisely the opposite side of the question." (Dkt. 29 at 4.) But neither of the cases cited by Atari evaluate the sufficiency of a Section 349 claim under the circumstances presented by this case.

In *Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241 (S.D.N.Y. 2015), the court was not presented with the question of whether defendant's alleged conducted constituted sufficient harm to the public interest for purposes of stating a claim under Section 349. Rather, the court makes only a passing reference to Section 349 in connection with defendant's motion for summary judgment to strike plaintiff's requests for punitive damages. *Id.* at 261–62. In *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632 (S.D.N.Y. 2016), no trademark claims are implicated whatsoever. Rather, *Casper* accuses defendants of false advertising under the Lanham Act—exactly the type of consumer injury and harm to the public interest contemplated under a deceptive practices statute, such as Section 349. In addition, both cases involved threats of actual injury to consumers in the form of economic harm. *See Tiffany & Co.*, 127 F. Supp. at 255; *Casper Sleep, Inc.*, 204 F. Supp. 3d at 641. In the present case, as Atari has not alleged the sale of any infringing goods, Atari does not make any such allegations (nor is it plausible that a reference to "Foot Pong" in the *Minneapolis/St. Paul Business Journal* in connection with a Target retail store in Northeast Minneapolis poses a risk of consumer injury or harm to the public interest in New York).

Atari fails to satisfy the requirements of Section 349 as a matter of law. Its claim that Target violated Section 349 (along with its associated claims for punitive and exemplary damages) should therefore be dismissed.

## II.   This Action Should be Transferred to the District of Minnesota

Despite no obvious connection to the state of California, Atari first filed this lawsuit in California as part of a series of cases it is prosecuting there. In response to Target's motion to dismiss and transfer the California action, Atari dropped that suit (along with its copyright claims) and re-filed here in New York. Now, Atari mischaracterizes the law to argue that the case should remain here. But the Opposition does not rebut Target's showing that this action merits transfer pursuant to the factors set forth in *Employers Ins. Of Wausau v. Fox Entm't Gp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008), and the case should be transferred to the District of Minnesota.

### A.   Target is Seeking Transfer on Multiple Grounds; As Such, There is No "Requirement" to File Declarations Regarding Witnesses

Atari's primary argument mischaracterizes the law. There is no requirement that a party seeking to transfer an action on multiple grounds, as Target does here, file "requisite affidavits" regarding its witnesses, and a motion that does not do so does not suffer "procedural infirmities." (Dkt. 29 at 5.) Instead, "a specific showing is required only when the movant seeks a transfer <u>solely</u> 'on account of the convenience of witnesses.'… [If the movant] seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." *Pence v. Gee Group, Inc.*, 236 F. Supp. 3d 843, 856 (S.D.N.Y. 2017), quoting *Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 455 (E.D.N.Y. 1987) (emphasis in original).

Atari neglects to mention that in the case it cites, the defendant "did not even urge the convenience of witnesses and parties below as a ground for § 1404(a) transfer," and the court specifically relied on that lack of argument in its holding. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). Furthermore, while Target acknowledges that it carries the burden, it is

nevertheless odd that Atari would seek to apply a supposed procedural "rule" to Target with such vigor but not follow it itself, as the Court has noted previously in this context. *See Price v. Stossel*, 2008 WL 2434137, at *4 (S.D.N.Y. June 4, 2008) (observing that "[t]he plaintiff's failure to provide competent evidence regarding his witnesses is surprising, given his strenuous invocation of the rules as they apply to [defendant]," and declining to credit plaintiff's witnesses only listed in the opposition). Target not only made a robust argument based on the convenience of witnesses, but also argued for transfer by reference to *all seven* factors set forth by the Second Circuit in *Wausau*, five of which favor Target (the other two are neutral). Therefore, Target was not obligated to provide "requisite affidavits" regarding its witnesses.

That said, Target is providing such a declaration with this Reply. This information does not come as a surprise to Atari, as Target filed a sworn declaration regarding its primary witness in support of its motion to transfer when it was forced to litigate this issue previously, in the Central District of California. Target was unable to provide an analogous declaration with its earlier filings in this Court, as the witness, Thomas Schneider, had recently retired from Target. Target has since determined that Mr. Schneider is now living in St. Croix Falls, Wisconsin, which is on the Minnesota-Wisconsin border and is less than 100 miles from Minneapolis— within the subpoena power of the District of Minnesota, but not this Court. (*See* Declaration of Melissa Jungbauer in Support of the instant Motion.)

These sworn statements support Target's original arguments that the convenience of the witnesses favors transfer to Minnesota. As noted, both the quality of the testimony and the quantity of witnesses are relevant to the assessment of this factor, and both tilt in Target's favor. Tom Schneider and his replacement—a second witness, based in Minnesota—were involved with the actual game itself in Target stores. (*See id*.) And the *Minneapolis/ St. Paul Business Journal* and its reporter are obviously based in Minnesota as well. Atari, by contrast, has only identified two witnesses, and has not supported its generalized assertions about those witnesses in its Opposition with sworn statements (which, of course, was not required, but is "surprising" under the circumstances, as noted by the court in *Price*, 2008 WL 2434137 at *4). Atari

apparently did not feel the testimony of those witnesses was important enough to file this suit in New York (rather than California) in the first instance, or to bring its other IP suits here (rather than California).

Atari is also wrong to say that Target "suggest[ed]" that the status of its own witnesses "end[s] the inquiry" or that there is a rule that "an action could never proceed outside of a defendant's home forum." (Dkt. 29 at 6.) Instead, as the Complaint identifies no individuals affiliated with Atari who could be potential witnesses, Target simply observed that Atari's allegations focus on Minneapolis (including a putative statement to a local publication) and fail to meaningfully connect to New York.

Finally, Atari fails to address the elephant in the room regarding this factor, which is that as recently as April 7 – less than two months ago – Atari was committed to requiring its own witnesses to participate in this litigation venued in Los Angeles, nearly 2,000 miles further from New York than is Minneapolis. Thus Atari does not seem to place any sort of real importance on the convenience of its witnesses, whereas Target has asserted the priority of this factor on behalf of its anticipated witnesses from the moment this venue dispute arose – first in the parties' meet and confer call prior to the filing of Target's transfer motion in California, then again in the California transfer motion itself, and now a third time in its briefing here.

This factor favors transfer to the District of Minnesota.

**B.      Atari Does Little or Nothing to Address the Remaining Factors**

As noted above, Atari's Opposition completely fails to acknowledge its blithe switch from one forum to another 3,000 miles away. Not only does this failure undermine Atari's argument as to the convenience of the witnesses, its absence also effectively concedes Target's argument on the first *Wausau* factor, the lack of any deference to Atari's choice of forum.

As to the third factor, the location of relevant documents and sources of proof, the allegations of the Complaint clearly implicate facts related to the activities of Target's headquarters employees in Minneapolis, Minnesota. It cannot seriously be disputed that that is where relevant documents and sources of proof for the case will be. Furthermore, Target does

not see, and Atari fails to explain, the relevance of the only two categories of documents referenced in the Opposition – "licensing agreements for uses analogous to Target's" and "revenue information pertinent to Atari's damages." (Dkt 29 at 6.) Regarding alleged damages, as the game was never sold, Target is unaware of what any "revenue information" could even be.

Atari does not address the fourth, fifth, sixth, or seventh *Wausau* factors at all, again ceding them to Target. It does not address the convenience of the parties (the fourth factor), unless its reference to Atari's New York corporate headquarters is intended to do so. (Dkt 29 at 6.) If that is Atari's argument, it fails: "A party's residence in a chosen forum, without more connecting a case in that forum, is insufficient to keep a case in that forum." *Litton v. Avomex Inc.*, 2010 WL 160121, *17 (N.D.N.Y. Jan. 14, 2010). Nor does Atari address the fifth factor, the locus of operative facts. While Atari includes a conclusory statement about this District's "close nexus" to the facts of the case at the end of a paragraph discussing *other* factors (including witnesses and the location of documents), Atari makes no actual *argument* as to this factor. (*See generally* Dkt. 29 at 6.) Atari does not address the sixth factor (subpoena power) at all, apparently accepting Target's argument that it favors Minnesota—as it obviously does in view of the retired former employee in Wisconsin.

## C. Atari's Ancillary State-Law Claims Are Not a Factor

Contrary to Atari's argument, its state-law claims do not affect the analysis. These claims were only added on this re-filing in New York: they were not a part of the original case in California. Regardless, as this Court has observed, "the possibility that the law of another jurisdiction governs the case is a factor accorded little weight on a motion to transfer, especially where no complex questions of foreign law are involved." *Morgan Guaranty Trust Co. of New York v. Tisdale*, 1996 WL 544240, *7 (S.D.N.Y. Sept. 25, 1996), citing *Dwyer v. General Motors Corp.*, 853 F.Supp. 690, 694 (S.D.N.Y. 1994) (citing cases). The gravamen of Atari's claims against Target are federal, and Atari cannot credibly claim that its New York State causes of action are "complex," meaning that the application of state law "is of little consequence, and… figures neutrally in the balancing." *Id.* As a final point, the sole case cited by Atari in

support, *Van Dusen v. Barrack*, is readily distinguishable, as it was a diversity action in which no federal substantive law was at issue. 376 U.S. 612, 615 (1964).

## CONCLUSION

In view of the foregoing, Target respectfully requests that this Court dismiss Atari's Federal Trademark Counterfeiting (Count I) and State Deceptive Practices (Count V) claims pursuant to Rule 12(b)(6), then transfer the remainder of the case to the District of Minnesota pursuant to 28 U.S.C. § 1404.

Dated: New York, New York
      June 3, 2019

Respectfully Submitted

STORCH AMINI PC

By: ___*/s/ Noam Besdin*_____
Lita Beth Wright
Noam Besdin
2 Grand Central Tower
140 E. 45th Street, 25th Floor
New York, NY 10017
Telephone: (212) 490-4100
Fax: (212) 490-4208
Email: lbwright@storchamini.com
Email: nbesdin@storchamini.com

Peter M. Routhier (*pro hac vice*)
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: +1 612 766 8770
Fax: +1 612 766 1600
Email: peter.routhier@FaegreBD.com

*Attorneys for Defendant Target Corporation*